J-A09015-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MICHAEL HATALA, DOMINIC POLICARE AND THE CHILDREN'S FREE CAMPGROUND FACILITIES FOUNDATION | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| JEWISH COMMUNITY CENTER OF SCRANTON, PENNSYLVANIA | |
| Appellant | No. 1234 MDA 2016 |

Appeal from the Order Entered June 24, 2016
In the Court of Common Pleas of Lackawanna County
Civil Division at No(s): 2016-CV-3738

BEFORE:  SHOGAN, J., OTT, J., and STABILE, J.

MEMORANDUM BY OTT, J.:                    **FILED AUGUST 21, 2017**

Jewish Community Center of Scranton, Pennsylvania (JCC) appeals from the order entered June 24, 2016, in the Court of Common Pleas of Lackawanna County regarding Michael Hatala's, Dominic Policare's, and The Children's Free Campground Facilities Foundation's (Appellees) petition for immediate restraining order.  In this timely appeal, JCC claims the trial court erred in: 1) addressing issues that were not contained in Appellees' pleadings, and 2) in granting injunctive relief based upon inadequate evidence.  Following a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm.

The genesis of this action was the purchase of approximately 101 acres of land upon which JCC, as prior owners, had conducted summer camp

activities. On December 5, 2005, JCC entered into an installment sales agreement with Michael Hatala and Dominic Policare in which the buyers greed to pay JCC a total of $500,000.00 for approximately 101 acres of land in Covington Township, Pennsylvania, commonly known as the "Jewish Community Center of Scranton Day Camp." **See** Appellees' Petition for TRO, Exhibit "A". There was a special condition of sale that appears to have led to the instant litigation. Specifically:

> A. Buyers acknowledge that Seller, for many years, has operated a summer day camp at the subject premises. The Parties agree that the Seller has the right to continue to operate a summer day camp at the subject premises from the date of the execution of this Agreement of Sale, to and after the date of closing, until such time that Seller gives written notice to Buyers that Seller is permanently ceasing all day camp operations. After closing, Seller shall pay to Buyers the sum of One Dollar ($1.00) per year for the annual rental fee of the subject premises.

Installment Sales Agreement, 12/5/2005, at ¶ 9A.

Additionally, Paragraph 9B gave JCC exclusive use and possession of the premises for June, July, and August of every year, plus such time as JCC needed to perform necessary work, inspections and maintenance as needed both before and after the summer months listed. Testimony from the hearing on the instant petition indicates that Hatala expected a formal lease to have been negotiated to replace the special terms of sale and additionally expected JCC to leave the property within three years. N.T. Hearing, 6/24/2016, at 17-18. Neither of those was included in the sales agreement and neither came to pass. Accordingly, JCC has retained the exclusive use

of the 101 acres of campground, for the camping season, for the sum of $1.00 per year, and may do so for as long as JCC desires.

The installment payments have all been tendered and on November 3, 2011, approximately six years after the inception of the installment sales agreement, the deed to the property was transferred to The Children's Free Campground Facilities Foundation, a Pennsylvania non-profit corporation. Michael Hatala and Dominic Policare are officers of that non-profit.

Over the years, the relationship between the parties has been problematic, at best. It currently appears that the two entities cannot come to any agreement about any aspect concerning the application of Paragraph 9A without court intervention. The initial conflict between Hatala and JCC instantly regarded whether JCC could hold any overnight camping activities and whether JCC could hold a birthday party on the property for its groundskeeper.

A hearing was held before the Honorable Margaret Bisignani-Moyle on June 24, 2016. Michael Hatala testified regarding the acrimonious history between the parties, including reference to a prior lawsuit that appears to have addressed the safety and maintenance of a bridge on the property. Although the lawsuit was referenced, none of the documents from that action has been made available to this Court.[1] However, the trial court

_____

[1] We mention this because there is some indication that there was some overlap of issues between the prior lawsuit and the instant one.

- 3 -

believed there was some overlap in the subject matter, particularly regarding whether The Children's Free Campground Foundation was named as an additional insured on the JCC policy. Insurance was at issue in the instant matter as being tangential to the issues of overnight stays by campers and the use of the property for a birthday party that was not part of any camping activity. The issue of insurance eventually led to questions of who was responsible for the physical maintenance of the campground property.[2]

In turn, Michael Hatala's testimony led to what might be fairly termed as bickering between counsel for the parties and Hatala. While this transpired, the trial court remarked several times the "insanity"[3] of all of the court actions. Eventually, counsel for JCC requested the hearing go off record. *See* N.T. Hearing, 6/24/2016 at 28.

After the off-the-record discussion took place,[4] the trial court announced, "Number one, after consideration of the arguments of all the parties and the limited testimony that's been taken I am prepared now to enter an order." The trial court then entered an oral order that was later

_____

[2] The record is somewhat difficult to follow. The parties are well aware of the history of this matter, but we are not.

[3] *See* N.T. Hearing, 6/24/2016 at 25, 26, and 27 (twice). Counsel for JCC agreed the behavior between the parties was "insanity". *Id*. at 27.

[4] There is no indication in the record as to the length of the off-the-record discussion.

memorialized in the written order instantly under appeal. That order, both verbal and written, addressed several issues, including the two that were the subject of Hatala's petition for temporary restraining order. Specifically, the order read:

> [I]t is hereby ORDERED and DECREED that [Hatala]'s request to prevent a plumber from having a birthday party on the camp premises is GRANTED. In addition, the following provisions shall apply:
>
> • [JCC] shall provide [Hatala] written proof of insurance adding [Hatala] as an added insured.[5]
>
> • [Hatala] shall provide [JCC] with written proof of incorporation.[6]
>
> • If [Hatala] believes there is reasonable damage to the camp premises, [Hatala] shall notify [JCC] of the damage. [JCC] shall have two (2) weeks to fix the damage in accordance with [Hatala]'s satisfaction. If [JCC] does not repair the damage within two (2) weeks, [Hatala] can fix the damage himself and bill [JCC] for expenses incurred in the repair. [JCC] is not obligated to repair any property that has reasonable wear and tear.
>
> • [JCC] shall provide [Hatala] keys to all of the camp buildings.
>
> • [Hatala] is entitled to access his property, but [Hatala] cannot interfere with camp activities.
>
> • [JCC] shall adequately clean the camp premises before [Hatala] takes possession of the property beginning on July 2,

---

[5] We believe this specifically refers to Children's Free Campground Facilities Foundation, as that is the name listed on the deed as owner of the property.

[6] Again, we believe this refers to the Children's Free Campground Facilities Foundation.

2016. Conversely, [Hatala] shall adequately clean the camp premises before leaving the property.

- [JCC] shall be entitled to seven (7) overnight stays on the camp property.

- [JCC] shall provide, to this Court, a written opinion from an engineer attesting to the safety of the camp lake. The written opinion shall be issued pending the approval of a D.E.P. permit.

Order, 6/24/2016.

It is significant that neither party objected to any portion of the order as announced by the court. Similarly, neither party voiced any concerns that the order did not correspond with whatever discussion had taken place off the record. In fact, several pages of the notes of testimony subsequent to the order concern how the order would be implemented. Counsel for JCC took part in these discussions. *See* N.T. 6/24/2015 at 31-38. The final comments made on the record appear to sum up what had proceeded:

> The Court: I understand. All right, but according to this you [Hatala] have to get their [JCC] approval [for Hatala to build his house on the property] so you might have a judge make that decision. If they don't agree, you will have to sue to see if they are withholding their agreement on [sic] unreasonably.
>
> Mr. Hatala: Okay.
>
> The Court: All right.
>
> Mr. Rothenberg [JCC Counsel]: Judge, on the payment, I just want to clarify on the payer issue that you dictated the order on so I'm clear on this –
>
> The Court: You are paying for the bridge.

Mr. Rothenberg: Okay. But if he feels there is a repair that should be made he gives us –

Mr. Hatala: I'll give it in writing.

Mr. Rothenberg: He gives us written notice, we have two weeks –

The Court: To repair it.

Mr. Rothenberg: Do we have a right to question whether it's necessary?

The Court: I guess you could wind up in court. You can get another TRO and say –

Mr. Rothenberg: Okay.

The Court: You know?

Mr. Rothenberg: Okay.

The Court: It's a sad, sad situation. All right, so we will prepare an order. Even the order isn't typed up we are going to prepare an order, we are going to send it out, but you are leaving the building under the order even though [you] don't have it in your hands. Does anybody have any questions about any of your responsibilities?

Mr. Hatala: No.

Mr. Rothenberg: No ma'am.

The Court: All right, for everyone's sake you are all – your blood pressure is going to [] kill you before you get to enjoy your property and vice versa, this can't be good for anybody living like this. Have a good day.

N.T. Hearing, 6/24/2015, at 37-38.

For the resolution of this appeal, the most important facts to note are that:

1) JCC requested the hearing go off the record, which request was granted;

2) substantive issues were clearly discussed therein;

3) as a result of the discussion, the trial court issued an order that touched upon issues that both were and were not specifically raised in Hatala's original petition; and

4) no objections were raised to the order and all on the record discussions after the order concerned how the parties would implement the order, including those issues that were not originally contained in Hatala's petition.

In its Pa.R.A.P. 1925(a) opinion, the trial judge noted that she determined that all the issues she ruled upon were intertwined and ongoing. *See* Trial Court Opinion, 9/27/2016, at 2. Accordingly, the trial judge determined that the interests of justice[7] were best served by the comprehensive order issued. *Id.* The trial judge additionally noted that no objections were raised to the proposed order, in either scope or substance. *Id*. at 4.

Our review of the certified record confirms that JCC did not object to any aspect of the order. Because no timely objection was raised before the trial court, the issues raised on appeal have been waived. *See* Pa.R.A.P. 302(a) (issues not raised before the trial court are waived); *B.G. Balmer &*

_____

[7] *See* 42 Pa.C.S. § 323 (granting courts the ability to act in the interest of justice).

*Co., Inc. v. Frank Crystal & Company, Inc.*, 148 A.3d 454, 468 (Pa. Super. 2016) (same).

Further, it is obvious that substantive issues were discussed off the record. However, there has been no attempt to provide this court with a recreation of that discussion.[8, 9]

> It is an appellant's duty to insure that the certified record contains all documents necessary for appellate review. If the necessary documentation is not in the certified record, this Court will find the issue raised on appeal waived.

*Love-Diggs v. Tirath*, 911 A.2d 539, 541 (Pa. Super. 2006). Accordingly, even if the issues had been preserved properly, without access to salient

---

[8] Counsel for JCC provided an affidavit in the Appellant's brief stating although there was discussion on the issue of damages, he did not agree to pay for any damages on the property and further claims the trial court took no testimony or evidence on the issue. However, this affidavit is not part of the certified record. "Any document which is not part of the official certified record is considered to be nonexistent, which deficiency may not be remedied by inclusion in the reproduced record." *Brandon v. Ryder Truck Rental, Inc.*, 34 A.3d 104, 106 (Pa. Super. 2011) (citations omitted). The proper method of providing this court with required information in such a situation is found at either Pa.R.A.P. 1923 (Statement in Absence of Transcript) or Pa.R.A.P. 1924 (Agreed Statement of Record).

[9] Appellant also failed to insure that the notes of testimony from the hearing were included in the certified record. All that was supplied was the cover sheet and index page. No actual notes of testimony were to be found in the certified record as delivered to this Court. We could have found all issues waived on this basis. *See Brandon v. Ryder*, *supra*. However, we independently obtained the notes of testimony from the Clerk of the Lackawanna County Courts.

information, we would have no way to conduct a review of JCC's claims. Therefore, the issue would be waived for that reason as well.

Order affirmed.

Shogan, J., joins the memorandum.

Stabile, J., concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/21/2017

- 10 -